## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TANYA LEWIS & | : | |
| TIMOTHY MAYHEW, | : | CIVIL ACTION |
|    Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | No. 16-6375 |
|    Defendants. | : | |

### MEMORANDUM

**Schiller, J.**                                                                                       **March 3, 2017**

While looking for a burglary suspect, officers of the Philadelphia Police Department allegedly barged illegally into the home of Tanya Lewis, and battered and detained her son Timothy Mayhew. When Lewis protested, Officer Alexander Branch arrested her for disorderly conduct. After a witness cleared Mayhew of any connection with the burglary, Mayhew also protested his treatment and Sergeant Aaron Farmbry arrested him for disorderly conduct. At trial, both Lewis and Mayhew were acquitted.

Lewis and Mayhew (together, "Plaintiffs") sued Officer Branch, Sergeant Farmbry, twelve unnamed police officers, and the City of Philadelphia for violating their First and Fourth Amendment rights and for committing various state torts. The City now moves to dismiss Plaintiffs' claims against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs' Complaint does not satisfy the basic requirements of municipal liability established in *Monell v. Dep't of Soc. Servs. of N.Y. City*, 436 U.S. 658 (1978) and its progeny, the Court will grant the motion.

1

I.      BACKGROUND

In December 2014, Lewis was living in her Philadelphia home with her son Mayhew. (Compl. ¶ 18.) Plaintiffs allege that on December 9, officers of the Philadelphia Police Department arrived outside Lewis's home while investigating a burglary that had taken place several blocks away. (*Id.* ¶ 19.) Lewis opened her front door to discover numerous police officers on her street. (*Id.* ¶¶ 20–22.) An officer stated that they were looking for a black man in a hoodie who they believed had entered her home. (*Id.* ¶ 23.) Lewis told the officers that her daughter's boyfriend had just returned from getting pizza. (*Id.* ¶ 24.) Lewis's daughter and her daughter's boyfriend then went outside to speak with the officers, apparently without incident. (*Id.* ¶ 25.)

Plaintiffs allege that suddenly and without justification, several police officers ran into Lewis's home and pointed their guns at Mayhew, who was standing in the living room. (*Id.* ¶¶ 27–29.) Fearing for his life, Mayhew ran into the cinder-block fenced backyard, where Plaintiffs allege that several police officers battered him. (*Id.* ¶¶ 30–33.) The officers then carried Mayhew to the street, placed him in a police car, and drove him to an in-person identification related to the burglary. (*Id.* ¶¶ 35, 41.) After the eyewitness cleared Mayhew of any connection to the burglary, Mayhew told Sergeant Farmbry that he was upset about his detention and treatment by the police. (*Id.* ¶¶ 42–43.) Sergeant Farmbry told Mayhew to stop speaking. (*Id.* ¶ 44.) When he refused, Sergeant Farmbry arrested Mayhew. (*Id.* ¶ 45.)

Meanwhile, Lewis had become upset about the officers' behavior and, after briefly fainting, questioned the officers about what they were doing to Mayhew. (*Id.* ¶¶ 34, 36–37.) Officer Branch told Lewis that she would be arrested if she did not stop speaking. (*Id.* ¶ 38.) When she continued to speak, he arrested her. (*Id.* ¶¶ 39–40.)

Lewis and Mayhew were separately taken to the seventeenth district police station, where they were both charged with disorderly conduct and issued citations. (*Id.* ¶¶ 40, 45–47.) Lewis and Mayhew then allegedly went to a hospital emergency room, where Mayhew was treated for his injuries. (*Id.* ¶¶ 48–49.) Soon after, Lewis filed a complaint about the incident with the Philadelphia Police Department's Internal Affairs Bureau. (*Id.* ¶ 50.) At trial two months later, Judge T. Francis Shields granted a motion for judgment of acquittal for both Lewis and Mayhew. (*Id.* ¶¶ 51–56.)

Two years later, Lewis and Mayhew sued Officer Branch, Sergeant Farmbry, twelve unnamed police officers, and the City of Philadelphia. They allege that the defendant police officers violated Plaintiffs' First and Fourth Amendment rights to be free from unlawful search, unlawful arrest, retaliatory arrest, malicious prosecution, assault, and the use of excessive force. (*Id.* ¶¶ 66–70.) They also assert that the officers committed the state law torts of false arrest, false imprisonment, malicious prosecution, trespass, conversion, assault, and battery. (*Id.* ¶¶ 72–73.) In addition, Plaintiffs allege that the City of Philadelphia proximately caused Plaintiffs' injuries through customs that encouraged Philadelphia Police Department officers to engage in unconstitutional conduct. (*Id.* ¶ 71; Pls.' Resp. Mot. Dismiss 7–9.) The City of Philadelphia now moves to dismiss the claims against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the nonmoving party. *See Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). A court need not, however, credit

"bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Anspach* ex rel. *Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 260 (3d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The "[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the Federal Rules of Civil Procedure impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 233. In deciding a motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks omitted).

The Third Circuit has established a two-part analysis for a motion to dismiss for failure to state a claim. First, the legal conclusions and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a

plausible claim for relief. *Id.* at 211. If the court can only infer the possibility of misconduct, the complaint must be dismissed because it has alleged—but failed to show—that the pleader is entitled to relief. *Id.*

### III.   DISCUSSION

The City argues that Plaintiffs' Complaint fails to include any factual allegations against the City specifically. Plaintiffs counter that the Court can infer from the behavior of police officers at the scene that the City had a custom of encouraging its police officers to engage in unconstitutional behavior. Because Plaintiffs' assertion does not meet the requirements of *Monell v. Dep't of Soc. Servs. of N.Y. City*, 436 U.S. 658 (1978), the Court will grant the City's motion.

#### A.   Municipal Liability Under 42 U.S.C. § 1983 and *Monell*

To state a claim for municipal liability under 42 U.S.C. § 1983 and *Monell*, a plaintiff must show that the municipality had a policy or custom that deprived the plaintiff of her constitutional rights, and that the policy or custom was the proximate cause of her injuries. *Watson v. Abington Twp.*, 478 F.3d 144, 155–56 (3d Cir. 2007). Municipal liability "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Monell*, 436 U.S. at 691–95). In other words, a municipality may be sued directly for constitutional violations only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.

First, a plaintiff must demonstrate a municipal policy or custom. A policy is "made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d

5

1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). A custom is an action that, "although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz*, 915 F.2d at 850. Municipal liability may be based on the actions of a single official policymaker if that person holds "final authority" to establish such policy. *Pembaur*, 475 U.S. at 480–83.

Under either the policy or the custom route, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Watson*, 478 F.3d at 156 (internal quotation marks omitted); *accord McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("Custom requires proof of knowledge and acquiescence by the decisionmaker."). But a plaintiff need not identify the specific responsible decisionmaker; instead, "[p]ractices so permanent and well settled as to have the force of law are ascribable to municipal decisionmakers." *Bielevicz*, 915 F.2d at 850 (internal quotation marks and modification omitted). A plaintiff need only establish, for example, that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations." *Id.* at 851; *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (recognizing that municipal liability can attach when a policymaker fails to act affirmatively at all, even though "the inadequacy of existing practice [is] so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need").

Second, a plaintiff must prove "that the municipal practice was the proximate cause of the injuries suffered." *Bielevicz*, 915 F.2d at 850. This requires "a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id.* But a plaintiff "need not demonstrate that their injuries were

6

the *direct* result of *formal* departmental procedures or encouragement." *Id.* at 851. Instead, a plaintiff can satisfy the requirements of § 1983 and *Monell* by demonstrating that municipal failure "to take precautions against future violations" led, at least in part, to the plaintiff's injuries. *Id.*

### B. Plaintiff's Complaint Does Not Allege Deliberate Action by a Municipal Policymaker

Plaintiffs concede that the only mention of the City in their Complaint—Paragraph 71—constitutes a legal conclusion that the Court must disregard. (Pls.' Resp. Mot. Dismiss 7); *see Fowler*, 578 F.3d at 210–11. Instead, Plaintiffs encourage the Court to infer municipal custom from the alleged behavior of numerous Philadelphia police officers, (Pls.' Resp. Mot. Dismiss 7–9), which the Court assumes to be true for the purpose of this motion, *see Fowler*, 578 F.3d at 210–11. They argue that absent a custom, police officers would not have entered Plaintiffs' home illegally or stood by while other officers engaged in an illegal search and seizure. (Pls.' Resp. Mot. Dismiss 8.) Without municipal blessing, Plaintiffs contend, their complaint to the Internal Affairs Bureau would not have gone unanswered. (*Id.* 8–9.)

The Court cannot infer custom from the facts alleged in the Complaint. Plaintiffs have not presented any factual allegations that "an official who has the power to make policy is responsible for . . . acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850. As the Third Circuit has explained, Plaintiffs can satisfy this requirement simply by showing "that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Id.* at 851. But in the absence of *any* allegation of municipal acquiescence or deliberate indifference, Plaintiffs are asking the Court to invoke the very *respondeat superior* theory barred by *Monell*. 436 U.S. at

7

691. This, the Court cannot do. However, the Court will afford Plaintiffs an opportunity to amend their Complaint.

## IV.  CONCLUSION

Because Plaintiffs have not provided factual allegations sufficient to satisfy the basic requirements of § 1983 and *Monell*, the City's motion is granted. An Order consistent with this Memorandum will be docketed separately.